Anna Y. Park, CA SBN 164242
Nakkisa Akhavan, CA SBN 286260
Connie K. Liem, TX SBN 791113
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, California, 90012
Telephone: (213) 785-3080
Facsimile: (213) 894-1301
Email: anna.park@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>FOCUS PLUMBING, LLC, FOCUS ELECTRIC, LLC, FOCUS CONCRETE, LLC, FOCUS FIRE PROTECTION, LLC, and FOCUS FRAMING, DOOR, & TRIM, LLC, collectively dba FOCUS COMPANIES GROUP OF NEVADA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>• **Sexual Harassment**<br>• **Retaliation**<br>• **Constructive Discharge**<br><br>(42 U.S.C. §§ 2000e et. seq.)<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action brought by Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII"), and Title I of the

Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Parties Veronica Basquez and Aurora Herrera-Garcia, and a class of aggrieved individuals. The Commission alleges that Focus Plumbing, LLC, Focus Electric, LLC, Focus Concrete, LLC, Focus Fire Protection, LLC, and Focus Framing, Door & Trim, LLC (collectively "Defendants") unlawfully discriminated against the Charging Parties and class of aggrieved individuals on the basis of sex (female) and retaliation in violation of Sections 703 (a) and 704 (a) of Title VII.

As alleged with greater particularity below, the Commission alleges that Defendants subjected the Charging Parties and a class of aggrieved individuals to sexual harassment, including but not limited to forcible kissing, forcible touching of male genitalia, unwanted grabbing and groping of arms, legs, buttocks, and breasts, sexually offensive and vulgar language, lewd facial expressions, and *quid pro quo* harassment. The *quid pro quo* harassment involved offers for better work assignments and work hours in exchange for acquiescing to engaging in sex acts, and threats of violence, rape, discharge, and being "black-balled" within the construction industry by the harasser if the female workers refused to acquiesce. The Commission further alleges that Defendants subjected the Charging Parties to harassment, insult, ridicule, intimidation, unwarranted discipline, and other adverse terms and conditions of employment in retaliation for engaging in protected activity, resulting in their constructive discharges.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed

within the jurisdiction of the United States District Court for the District of Nevada.

## PARTIES

3. The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by §§ 706(f)(1) and (3), Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Focus Plumbing, LLC has continuously been a limited liability company doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

5. At all relevant times, Defendant Focus Plumbing, LLC has continuously employed fifteen (15) or more persons.

6. At all relevant times, Defendant Focus Plumbing, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1)(b), (g), and (h).

7. At all relevant times, Defendant Focus Electric, LLC has continuously been a limited liability company doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

8. At all relevant times, Defendant Focus Electric, LLC has continuously employed fifteen (15) or more persons.

9. At all relevant times, Defendant Focus Electric, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1)(b), (g), and (h).

10. At all relevant times, Defendant Focus Concrete, LLC has

continuously been a limited liability company doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

11. At all relevant times, Defendant Focus Concrete, LLC has continuously employed fifteen (15) or more persons.

12. At all relevant times, Defendant Focus Concrete, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1)(b), (g), and (h).

13. At all relevant times, Defendant Focus Fire Protection, LLC has continuously been a limited liability company doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

14. At all relevant times, Defendant Focus Fire Protection, LLC has continuously employed fifteen (15) or more persons.

15. At all relevant times, Defendant Focus Fire Protection, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1)(b), (g), and (h).

16. At all relevant times, Defendant Focus Framing, Door & Trim, LLC has continuously been a limited liability company doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

17. At all relevant times, Defendant Focus Framing, Door & Trim, LLC has continuously employed fifteen (15) or more persons.

18. At all relevant times, Defendant Focus Framing, Door & Trim, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §

2000e-(1) (b), (g), and (h).

19. Since at least 2017, these Defendants have been collectively operating as a single employer and/or integrated enterprise. Defendants have common management and ownership, centralized control of labor operations, and interrelation operations as set forth below:

    a. Defendants collectively operate as general construction company that provides plumbing, electrical, framing, door and trim, concrete, and fire protection services for the construction of multi-family residential units in Nevada;

    b. Defendants publicly represented themselves collectively as the "Focus Companies Group of Nevada;"

    c. Defendants operate under the common ownership and management of President/Owner Steve Menzies;

    d. Defendants have common managers, such as area supervisor, and share hourly employees and equipment;

    e. Defendants share a common corporate headquarters and human resources located at 1220 S. Commerce St., Suite 120, Las Vegas, NV 89102;

    f. Defendants share personnel forms such as the job application and termination forms; and

    g. Defendants share the same legal counsel.

20. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, direct and indirect employer, single employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants

complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

21. The EEOC is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore the EEOC sues said defendants by fictitious names. The EEOC reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. The EEOC alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and the EEOC will amend the complaint to allege such responsibility when the same shall have been ascertained by the EEOC.

## ADMINISTRATIVE PROCEDURES

22. More than thirty (30) days prior to the institution of this lawsuit, Charging Parties Veronica Basquez and Aurora Herrera-Garcia filed charges of discrimination with the Commission alleging violations of Title VII by Defendant Focus Plumbing, LLC.

23. Prior to filing suit, the Commission issued Defendants Letters of Determination on both charges of discrimination, finding reasonable cause to believe that Title VII was violated and invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

24. The Commission engaged in communications with all Defendants and provided Defendants the opportunity to remedy the discriminatory practices as described in the Letter of Determinations for both Charging Parties.

25. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

26. On August 17, 2021, the Commission issued to Defendants Notices of Conciliation Failure for the two charges, advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

27. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### Sexual Harassment

28. Since at least 2017, Defendants have engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by subjecting the Charging Parties and a class of aggrieved individuals to a hostile work environment and *quid pro quo* sexual harassment that culminated in a tangible employment action on the basis of sex (female) as follows:

*Charging Party Veronica Basquez*

29. In or around the summer of 2017, Charging Party Veronica Basquez ("Basquez") began her employment with Defendants as a "Finisher" performing light duty plumbing-related responsibilities such as installing plumbing fixtures, caulking, and cleaning.

30. "Finishers" like Basquez would report to work at various construction sites as necessary and work under the direct supervision of Foreman Adolfo Chavez ("A. Chavez").

31. As a Foreman, A. Chavez was empowered to assign work, assign work hours, reassign job responsibilities, grant or deny leave requests, and issue written discipline for subordinate employees.

.

32. During the course of her employment, Basquez was subjected to a sexually hostile work environment on almost a daily basis by A. Chavez, which

included: a) unwanted touching, spanking, grabbing, and groping of Basquez's arms, legs, thighs, and buttocks, b) sexual advances, c) inquiries and sexually offensive comments about her sex life, d) falsely accusing her of having sex with other co-workers, and e) lewd requests for engaging in a sexual threesome and oral sex.

33. During the course of her employment, Basquez was subjected to *quid pro quo* sexual harassment on almost a daily basis by A. Chavez, which included: a) offers for better work assignments and work hours in exchange for acquiescing to having sex with him, and (b) threats of violence, rape, discharge, and being "black-balled" within the construction industry by A. Chavez if she refused to acquiesce to his sexual demands.

34. On or about August 21, 2018, the sexual harassment escalated when A. Chavez grabbed and held down Basquez's arms down to forcibly kiss her face and lips several times. A. Chavez also threw Basquez against a wall and grabbed her face to forcibly kissed her again. He placed his hands over her breasts and rear end, managed to force her hands onto his erect penis, and attempted to grab Basquez's genitalia.

35. The sexual harassment by A. Chavez culminated in a tangible employment action when Basquez was subjected to reassignment with significantly different job responsibilities.

36. Shortly after she complained about being sexually harassed by A. Chavez, Basquez was reassigned to perform undesirable or detrimental work assignments. She was required to perform job responsibilities involving heavy labor such as lifting toilets, washer/dryers, and water heaters without assistance.

37. The heavy lifting subsequently led Basquez to suffer a stroke resulting in partial paralysis.

38. In or around March 2019, due to the sexual harassment Basquez suffered, she was constructively discharged.

*Charging Party Aurora Herrera-Garcia*

39. In or around August 2018, Charging Party Aurora Herrera Garcia ("Garcia") began her employment with Defendants as a "Finisher" performing light duty plumbing-related responsibilities such as installing plumbing fixtures, caulking, and cleaning.

40. Garcia worked in the same unit with Basquez and was also supervised by Foreman A. Chavez.

41. During the course of her employment, Garcia was subjected to a sexually hostile work environment on almost a daily basis by A. Chavez, which included: a) multiple sexual advances involving unwanted touching, grabbing and groping of Garcia's arms, legs, and buttocks, b) lewd requests for engaging in a sexual threesome and oral sex, and c) detailed requests for lewd sex acts including (i) having sexual intercourse on the table and in other positions, (ii) orally pleasing her with his tongue using obscene facial gestures, and (iii) to "eat her out."

42. During the course of her employment, Garcia was subjected to *quid pro quo* sexual harassment on almost a daily basis by A. Chavez, which included: a) offers of better work assignments and hours in exchange for sex, and b) threats of violence, rape, discharge, undesirable work assignments, being transferred away from Basquez, and being "black-balled" within the construction industry if she refused to acquiesce to his sexual demands.

43. Co-workers Basquez and Garcia quickly became friends. As victims of workplace sexual harassment and egregious threats by A. Chavez, they both grew to rely on and support each other.

44. On or about August 20, 2018, the sexual harassment escalated when A. Chavez suddenly grabbed Garcia from behind and tried to press his penis on her buttocks as she was bent over installing a pipe for a washer. As he held her down, A. Chavez told Garcia that he wanted her, that she liked it and wanted it, and that he wanted to rape her. He told Garcia that he wanted to be alone with her so that if she

screamed, no one would hear. A. Chavez grabbed her face to forcibly kiss her, and then grabbed his penis. He told Garcia that she was making his penis hard and that he would pay her money like a prostitute. After Garcia managed to escape his grasp and attempted to leave the construction site, A. Chavez grabbed her again and forced her to touch his erect penis with both her hands. After she escaped for the second time, he told Garcia that she wasn't going to be allowed to work with Basquez anymore, and that from now on her work would "not be the same."

45. The sexual harassment by A. Chavez culminated in a tangible employment action when Garcia was subjected to involuntary reassignment with significantly different job responsibilities.

46. Shortly after she complained about being sexually harassed by A. Chavez, Garcia was reassigned to perform undesirable or detrimental work assignments. She was required to perform job responsibilities involving heavy labor such as lifting toilets, washer/dryers, and water heaters without assistance.

47. In or around October 2018, due to the sexual harassment Garcia suffered, she was constructively discharged.

*Other Adversely Affected Individuals*

48. Since at least 2017 through the present, other aggrieved individuals were subjected to a sexually hostile work environment and *quid pro quo* sexual harassment by A. Chavez, Foreman Paulo Reyes, Lead Plumber Valentin Chavez, and other supervisors and co-workers. The sexual harassment included but was not limited to a) unwanted touching, groping, and grabbing of female genitalia, arms, and legs, b) being exposed to a harasser grabbing and exposing his male genitalia, c) leering, d) sexually vulgar language and comments about sexual desires and lewd sex acts, and e) the posting of a vulgar hand drawing of a penis penetrating a naked woman.

49. The sexual harassment was sufficiently severe or pervasive to as alter the Charging Parties' and other adversely affected individuals' working conditions and created sexually a hostile work environment.

50. The Charging Parties and other adversely affected employees reasonably perceived their work environment to be sexually abusive or hostile work environment, to the extent that both Charging Parties were forced to quit.

51. The Charging Parties and other adversely affected individuals did not welcome the sexual harassment by the foreman, supervisors, and co-workers. They opposed and rejected the sexually harassing conduct and sexual advances.

52. Defendants knew or should have known of the sexual harassment experienced by the Charging Parties and the other adversely affected individuals because the sexual harassment was constant, conspicuous, and perpetrated by foremen, supervisors, and co-workers.

53. Defendants failed to take prompt and effective remedial action reasonably calculated to end the harassment, including but not limited to failing to a) either investigate or conduct an adequate investigation, b) adequately discipline the harasser foreman, supervisors and/or coworkers, c) provide anti-sexual harassment training to foremen, supervisors, and managers, and d) provide written EEO policies and procedures in both English and Spanish. Defendants failed to end the harassment after the Charging Parties complained in August 2018.

54. Defendants never disciplined A. Chavez for engaging in sexual harassment. Defendants' fired A. Chavez in late August 2018 for reporting fraudulent work hours as opposed to sexual harassment.

55. Sometime in 2019, Defendants allowed A. Chavez to return to the workplace. Sexual harassment has been ongoing through 2020.

Retaliation

56. Since at least 2018, Defendants subjected Basquez and Garcia to a hostile work environment, unwarranted discipline, and other adverse actions in retaliation for having engaged in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

57. On or about August 22, 2018, Basquez complained about A. Chavez's conduct, including about the August 20, 2018, events described in Paragraph 34

58. On or about August 22, 2018, Garcia complained about A. Chavez's conduct, including about the August 20, 2018, events described in Paragraph 44.

59. After, and in response to, Basquez and Garcia complaints, Defendants retaliated against Basquez and Garcia.

60. Specifically, Defendants reassigned Basquez and Garcia to significantly different job responsibilities involving heavy labor. These undesirable and detrimental job responsibilities included lifting toilets, washer/dryers, and gas heaters without assistance.

61. In addition, in September 2018, Foreman Paulo Reyes subjected Basquez and Garcia to sexually offensive comments, inquiries regarding alleged sex acts with A. Chavez, insults, ridicule, and intimidation in retaliation for having complained about being sexually harassed by A. Chavez. Among other things, Foreman Reyes openly mocked Basquez and Garcia by telling them in front of co-workers that Defendants never disciplined A. Chavez for engaging in sexual harassment despite their complaint.

62. Due to Defendants' retaliation, Basquez and Garcia were constructively discharged.

63. The effect of the practices complained of above, has been to deprive Charging Parties Basquez and Garcia, and other adversely affected individuals, of equal employment opportunities and otherwise adversely affect their status as an employee, because of their sex, female.

64. The unlawful employment practices complained of above were intentional and caused Charging Parties Basquez and Garcia, and other adversely affected individuals, to suffer emotional distress.

65. The unlawful employment practices complained of above, were done with malice or with reckless indifference to the federally protected rights of Charging Parties Basquez and Garcia, and other adversely affected individuals.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with each of them, from engaging in sexual harassment, retaliation, and any other employment practices which discriminate based on sex and retaliation.

B. Order Defendants to institute and carry out policies, practices, and programs to ensure equal employment opportunities, and which eradicate the effects of past and present unlawful employment practices.

C. Order Defendants to make Charging Parties Basquez and Garcia, and other adversely affected individuals whole by providing compensation for past and future pecuniary losses, including but not limited to out-of-pocket expenses suffered by Charging Parties and other adversely affected individuals which resulted from the unlawful employment practices described above in the amounts to be determined at trial.

E. Order Defendants to make Charging Parties Basquez and Garcia, and other adversely affected individuals whole by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial. The non-pecuniary losses include

emotional pain, suffering, inconvenience, mental anguish, humiliation and loss of enjoyment of life, in amounts to be determined at trial.

  F. Order Defendants to pay Charging Parties Basquez and Garcia, and other adversely affected individuals punitive damages for malicious and/or reckless conduct in an amount to be determined at trial.

  G. Award the Commission its costs of this action.

  H. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 23, 2021   Respectfully Submitted,

GWENDOLYN YOUNG REAMS,
Acting General Counsel
Washington, DC

LISA MORELLI,
Acting Associate General Counsel
Washington, DC

By: _____
ANNA Y. PARK
Regional Attorney
EEOC – Los Angeles District Office

NAKKISA AKHAVAN
Supervisory Trial Attorney

CONNIE K. LIEM
Senior Trial Attorney

ATTORNEYS FOR PLAINTIFF
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION